IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| RODNEY WISEMAN | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:09cv68 |
| WARDEN BISCOE, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Rodney Wiseman, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se,* filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the lawsuit pursuant to 28 U.S.C. §636(c). As Defendants, Wiseman named Warden Chuck Biscoe, Warden Robert Herrera, Warden Bryan Gordy, Captain Bruce Foreman, and Officer Joel Lovelady.

An evidentiary hearing was conducted on April 29, 2009, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Wiseman says that on May 10, 2008, he was heading to the dayroom on the Beto Unit when he was stopped by Officer Lovelady, who asked what he was doing. Wiseman told him that he was going to the dayroom and that he had received permission to do so. Lovelady ordered him to put his arms behind his back, and Wiseman complied.

At this point. Wiseman says, Lovelady hit him in the face three times with his handcuffs, and then began hitting him with his fists. Wiseman turned around and grabbed the bars. Lovelady ordered him to stop resisting even though he was not resisting. Wiseman told Lovelady several times to calm down, but Lovelady would not. Other officers watched the assault for a while, and finally came over and intervened. Wiseman says that he was taken to the infirmary for a use of

1

force physical exam, where he received bandages on his eye. He stated that he suffered cuts and bruises as well as a black eye.

Wiseman testified that he sued Warden Biscoe because Biscoe was in charge of the unit staff, oversees everyone, and is supposed to provide a "safe environment." He stated that Biscoe failed to train Lovelady in "proper use of force policy."

Next, Wiseman said he sued Warden Herrera because Herrera had conducted the initial investigation into the incident. He says that Herrera called him to his office and threatened to have Wiseman criminally prosecuted for striking an officer. Wiseman told Herrera that he had not struck Lovelady and that it was all on video. He acknowledges that Sgt. Broxton gave Herrera an affidavit indicating that he, Wiseman, had done nothing wrong. Wiseman stated that Herrera "should have fixed the situation" and that Herrera was "grossly negligent," adding that Herrera also had failed to properly train his officers.

The third defendant named was Bryan Gordy, whom Wiseman says answered his Step One grievance. He says that Gordy did nothing to stop further assaults, indicating that he had told Gordy that Lovelady was continuing to threaten him after the incident but that Gordy did nothing to move either Wiseman or Lovelady off of that wing. He acknowledged that Lovelady only assaulted him once, in the incident forming the basis of the complaint, but asserted that Gordy's failure to move him away from Lovelady afterwards, when Lovelady was threatening him, was "grossly negligent."

When the incident occurred, Wiseman said, Captain Foreman was no more than 30 feet away. He says that he called for Foreman to come and intervene but that Foreman did not do so, even though the captain witnessed the whole incident. Wiseman said that Captain Foreman should have intervened to stop the assault and that he, Foreman, had failed to properly train and supervise his officers.

Wiseman said that besides the cuts and bruises which he sustained, he now suffers from "lazy eye," twitches, and occasional blurred vision in his eye. He said that on one occasion,

he complained to the medical department of blurred vision and was given "some kind of solution," but acknowledged that he had not made any complaints to medical personnel about "lazy eye" or twitches in his eye.

Nurse Kathy Grey, a correctional nurse who also appeared at the Spears hearing, testified under oath concerning the contents of Wiseman's medical records. Nurse Grey said that these records show that Wiseman was brought to the clinic with three superficial cuts on his eyebrow and that there was no need for sutures or Dermabond. He was given instructions on wound care and topical antibiotic ointment. She added that the medical records contained no complaints of "lazy eye" or twitching.

Chip Satterwhite, a TDCJ regional grievance coordinator, testified that an extensive use of force investigation was done into Wiseman's allegations, which resulted in Lovelady's being fired and Wiseman being found not guilty on a disciplinary case which he had been given. Wiseman said that he had heard that Lovelady may have been fired over some other incident, but the use of force paperwork indicates that Lovelady was fired for his conduct involving Wiseman.

<u>Legal Standards and Analysis</u>

The Supreme Court, in Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992), held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline; the Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson, 112 S.Ct. at 999. Wiseman's allegations, if proven, show a possible constitutional violation on the part of Officer Lovelady, and this claim requires further judicial proceedings.

The Fifth Circuit has stated that a supervisory officer may be held liable under Section 1983 if he refuses to intervene when subordinates are beating an inmate in his presence. Harris v. Chanclor, 537 F.2d 203, 205 (1976). Wiseman's assertion that Captain Foreman stood by and

watched the assault, if proven, sets out a potential constitutional violation, and this claim requires further judicial proceedings.

Wiseman states that Warden Biscoe is in charge of the unit staff and is responsible for providing a safe environment. He said that Warden Biscoe failed to train his staff in proper use of force policy.

The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Wiseman has not shown that Warden Biscoe was personally involved in a constitutional deprivation, that a causal connection exists between wrongful conduct by Warden Biscoe and a constitutional deprivation, or that the warden implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. Wiseman has not shown that prison or unit policies were constitutionally deficient, nor that such policies were a moving force behind the alleged constitutional deprivation in that case; on the contrary, unit officials investigated the incident, determined that Lovelady had violated the prison or unit policies, and fired him as a result.

Similarly, Wiseman has not shown a "failure to train" by Warden Biscoe such as he alleges. The Fifth Circuit has held that absent a supervisor's overt personal participation in the events giving rise to the claim, a plaintiff raising a claim of failure to train must show that the supervisor actually failed to train or supervise the subordinate official, a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and that the failure to train

4

or supervise amounted to deliberate indifference. Mesa v. Prejean, 543 F.3d 264, 274 (5th Cir. 2008), citing Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). The Court went on to observe that proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights. Mesa, 543 F.3d at 274, citing Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003).

Here, Wiseman has not shown an actual failure to train or supervise, but simply points to a single instance in which a subordinate official apparently violated policy. This is not sufficient to show an actual failure to train or supervise; Wiseman offers nothing to indicate that Lovelady lacked training in use of force procedures, rather than simply choosing to disregard this training. Nor has he shown that Warden Biscoe acted with deliberate indifference with regard to Lovelady's training. Wiseman's claim against Warden Biscoe is without merit.

To the extent that Wiseman sues Warden Herrera on a theory of failure to train or supervise, his claim lacks merit for the same reason. Wiseman also asserts that Warden Herrera threatened to criminally prosecute him, even though he had done nothing wrong; he does not indicate that any criminal prosecution actually took place.

The Fifth Circuit has held that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). The fact that Warden Herrera threatened to initiate criminal charges against Wiseman is not itself a constitutional violation; the TDCJ records contain no mention of any criminal charges against Wiseman, but show that he was found not guilty on a disciplinary case written by Lovelady based on a statement by Sgt. Broxton and a review of the videotapes. Wiseman's claim against Warden Herrera is without merit.

Finally, Wiseman sues Brian Gordy, complaining that after the Step One grievance was filed, Gordy did nothing to separate him from Lovelady. He says that Lovelady continued to threaten him, although he acknowledges that Lovelady did not assault him again.

The Fifth Circuit has held that prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

More recently, the Supreme Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (noting that deliberate indifference is "an extremely high standard to meet.")

In this case, Wiseman has not shown that the failure to move him off of the wing amounted to deliberate indifference to his safety, whether or not it amounted to negligence or carelessness. Nor has he shown that the investigation of his grievance amounted to a constitutional

violation. Even if no action was taken in direct response to Wiseman's grievance, an investigation into the incident was done, which concluded that Wiseman had done nothing wrong and that Officer Lovelady should be fired, which he was. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). Wiseman has failed to show that Gordy violated his constitutional rights, and so his claim against Gordy is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Wiseman's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted against the Defendants Warden Biscoe, Warden Herrera, and Warden Gordy. It is accordingly

ORDERED that the Plaintiff's claims against the Defendants Warden Biscoe, Warden Herrera, and Warden Gordy are hereby DISMISSED with prejudice as frivolous. It is further

ORDERED that the Defendants Warden Biscoe, Warden Herrera, and Warden Gordy are hereby DISMISSED as parties to this lawsuit. The dismissal of these claims and parties shall have no effect upon the Plaintiff's claims against the Defendants Joel Lovelady and Bruce Foreman. Finally, it is

ORDERED that the dismissal of these claims and parties shall not count as a strike for purposes of 28 U.S.C. §1915(g).

**So ORDERED and SIGNED this 8th day of May, 2009.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE